## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CHRISTOPHER TAHCHAWWICKAH,**

     **Plaintiff,**

     **v.**                           **CASE NO.  24-3017-JWL**

**J. HERNANDEZ, et al.,**

     **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Christopher Tahchawwickah brings this pro se civil rights action under 42 U.S.C. § 1983. He is in pretrial custody at the Seward County Jail in Liberal, Kansas ("SCJ") and he has been granted leave to proceed in forma pauperis. The matter comes now before the Court on Plaintiff's timely filed second amended complaint. (Doc. 11.)

### I.  Screening Standards

As stated in the Court's previous orders, the Court is required by statute to screen all prisoner complaints and to dismiss them or any portion of them that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48-49 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true.

1

*Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

## II.  The Second Amended Complaint

The second amended complaint names as Defendants Detention Officer J. Hernandez, Detention Officer Kaelan Martinez, and Captain Mathew Fenn, all of whom work at the SCJ. (Doc. 11, p. 1-3.) The factual background for the second amended complaint alleges[1] that Plaintiff is a practicing Muslim but is not allowed to pray outside of his cell. *Id.* at 16. Moreover, Defendant Hernandez has threatened to take away Plaintiff's prayer rug. *Id.*

On December 4, 2023, Defendant Martinez filed a report stating that Plaintiff made comments that she interpreted as a direct threat that put her in fear for her safety. *Id.* at 6; (Doc. 11-1, p. 3). According to the report, which Plaintiff contends is false, Plaintiff called up to the

---

[1] Because the Court accepts all well-pleaded allegations in the complaint as true for purposes of screening, the alleged facts are set forth herein as if they are true. *See Anderson*, 469 F.3d at 913.

tower at approximately 12:43 p.m. that day and, after they spoke, Defendant Martinez heard Plaintiff walk away from the speaker. (Doc. 11-1, p. 4.) She then heard Plaintiff say he was going to "'kill one of those mother fuckers,'" among other comments about banging heads into the wall and "'these mother fuckers don't stand a chance.'" *Id.* Defendant Martinez spoke with Defendant Fenn about the incident and Defendant Fenn filed a sworn affidavit and a report about her statement; Defendant Fenn also filed a sworn affidavit containing what Plaintiff alleges are lies. (Doc. 11, p. 9; Doc. 11-1, p. 1, 5.) On another occasion[2], however, Defendant Martinez escorted Plaintiff to a Zoom meeting; no other officers were there. (Doc. 11, p. 5-6.)

On December 9, 2023, Plaintiff heard Detention Officer Hall falsely telling other inmates that another Muslim inmate was involved in a sex crime. *Id.* at 4. Later that day, while Plaintiff was standing outside of his cell, he was told to lock down. *Id.* at 2. Plaintiff went into his cell and Detention Officer Hall arrived with Defendant Martinez and another detention officer. *Id.* at 2, 4. Plaintiff told Detention Officer Hall that "she needed to start respecting us," meaning himself and the other Muslim inmate, and he called her a derogatory name. *Id.* at 4. Multiple SCJ staff arrived and Plaintiff was handcuffed and escorted to segregation. *Id.* Plaintiff's multiple requests to be returned to general population have been denied and he remains in segregation. *Id.* at 5. He states that he was put in segregation for "[n]ot following day room rules[, d]isobeying a direct order[, a]busive language t[o]ward an officer[, and d]isorderly conduct." *Id.* at 8. Remaining in segregation has caused him stress and post-traumatic stress disorder and he is not allowed to use a tablet to access the law library. *Id.* at 16-17.

---

[2] It is not clear from the second amended complaint when this event occurred; dates given include November 19, 2024 (Doc. 11, p. 5) and January 19, 2024, *id.* at 6. Because the facts supporting the claims in this complaint are not set out in chronological order and are not, for the most part, tied to a specific count, it is difficult to discern the precise order of the alleged events.

On December 22, 2023, outside of Plaintiff's presence, Defendant Hernandez opened an envelope from this Court to Plaintiff and took notes on the orders contained therein. *Id.* at 10. Apparently, Defendant Hernandez made a comment to Plaintiff that led him to believe that she was aware of the contents of the envelope. *See id.* at 10-11. Plaintiff submitted a grievance two days later, which was denied the same day. *Id.* Plaintiff appealed the denial and Defendant Fenn replied, explaining that Defendant Hernandez made the comment based on her knowledge of independent correspondence to the Seward County Sheriff's Office; Defendant Hernandez merely assumed that Plaintiff's mail related to the same topic. *Id.* at 14-15. All of the staff requests and grievances Plaintiff submitted in 2023 have been "'erased'" from the kiosk and Plaintiff does not receive his mail in its entirety. *Id.* at 15-16.

In January 2024, Plaintiff was charged in Seward County District Court with one count of criminal threat based on the reports filed by Defendants Martinez and Fenn about Plaintiff's comments; Plaintiff advises that the charges were "'back dated'" to December 4, 2023. (Doc. 11, p. 7-8, 10.) Plaintiff was served with the charging document on January 4, 2024, after another case he has pending in this Court, Case No. 23-0328-EFM-ADM, hereinafter referred to as *Tahchawwickah I*, "was approved for screening."[3] *Id.* at 10; (Doc. 11-1, p. 2).

As Count I of the second amended complaint, Plaintiff alleges that his remaining in segregation lockdown since December 9, 2023 is due to illegal retaliation. *Id.* at 18.  As Count II, Plaintiff alleges wrongful or false imprisonment in violation of the Fourth Amendment to the United States Constitution, based on Defendants Fenn and Martinez' false reports that led to the criminal threat charge. *Id.* As Count III, Plaintiff alleges the violation of the Eighth Amendment's

---

[3] Although the Court accepts all well-pleaded factual allegations as true, the Court may take judicial notice of its own records and files. *See Gee v. Pacheco*, 627 F.3d 1178, 1194 (10th Cir. 2010). Those records reflect that *Tahchawwickah I* did not pass screening until February 2024. *See* Case No. 23-3238-EFM-ADM, Docs. 27-28.

prohibition of cruel and unusual punishment, based on his being kept in segregation for over 110 days "on false charges of criminal threat." *Id.* at 19. As Count IV, Plaintiff alleges the violation of his First Amendment rights, based on Defendant Hernandez' opening Plaintiff's legal mail outside of his presence and Plaintiff not receiving his mail in its entirety. *Id.* at 20. As Count V, Plaintiff alleges the denial of due process in violation of the Fourteenth Amendment, based on his grievances and staff requests from December 2023 being erased. *Id.*

As relief, Plaintiff seeks an order directing that he be moved to another facility and/or that he be allowed more than one hour of law library access. *Id.* at 17. He also seeks $20,000,000.00 in money damages, injunctive relief, and punitive damages." *Id.* at 21.

### III. Discussion

#### A. Joinder

Plaintiff's initial complaint in this matter did not comply with the rules on joining defendants and claims in a single action. (Doc. 1.) Thus, on February 12, 2024, the Court issued a memorandum and order ("the February M&O) that, in relevant part, stated:

> After reviewing the complaint, the Court concludes that it does not comply with the rules on joining defendants and claims in a single action. Thus, some or all of the claims in the complaint are subject to dismissal. Federal Rule of Civil Procedure[4] 20(a)(2) governs permissive joinder of defendants and pertinently provides:
>
>> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

---

[4]The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Pro se litigants must "follow the same rules of procedure that govern other litigants." See *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993)(federal rules apply to all litigants, including prisoners lacking access to counsel).

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."

While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted). The Court of Appeals for the Seventh Circuit has explained that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In other words, under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." *Id.*

In sum, under Rule 18(a), Plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

It is not clear from the complaint that Plaintiff's multiple claims involve all named Defendants or that his claims against all Defendants arise from the same transaction or occurrence and involve common questions of law or fact. Plaintiff raises claims involving his mail, Defendants' practices related to Plaintiff's grievances, SCJ kitchen conditions, violations of his right to free exercise of his religion by Defendants' failure to comply with Plaintiff's religious dietary needs, retaliation for filing grievances, retaliation for protesting a Defendant spreading dangerous falsehoods about another inmate, baseless criminal charges, and improper confinement in segregation. Varying Defendants are alleged to be involved in different violations. Thus, the complaint appears to violate both Rule 18(a) and 20(a)(2). Plaintiff is therefore required to file an amended complaint stating (1) only those claims that arise against a single defendant or, if he wishes to name multiple defendants, (2) stating only those claims that arise from the same transaction or occurrence and have common questions of fact or law. Put another way, Plaintiff should set forth in the amended complaint the occurrence or occurrences he will hereinafter pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly joined defendants and occurrences. Alternatively, Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

(Doc. 5, p. 4-6.)

Although the amended complaint (Doc. 8) contained only a sole count and therefore did not suffer from joinder problems, the second amended complaint (Doc. 11), which is now controlling, does. It includes counts involving his being housed in segregation, his currently pending state criminal charge, his legal mail, and the SCJ grievance and staff request system, and not all Defendants are involved in the events that gave rise to these counts.

The Federal Rules authorize the Court, on its own initiative at any stage of the litigation, to drop any party and sever any claim. Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 Fed. Appx. 877, 881 (10th Cir. 2011) (holding that to remedy improperly joined claims or parties, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately). As explained below, however, all of the counts in the second amended complaint are independently subject to dismissal. Although the Court "should freely give leave [to amend a complaint] when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), all of the deficiencies in the second amended complaint are either deficiencies that Plaintiff has already had the opportunity to correct or deficiencies that could not be cured by amendment. Thus, this matter will be dismissed without prejudice.

### B. Count I

In Count I, Plaintiff alleges that he has been subjected to unconstitutional retaliation. Plaintiff raised a retaliation claim in his initial complaint. (Doc. 1, p. 6-9.) In the February M&O, the Court explained:

> To the extent that Plaintiff wishes to bring a claim for retaliation, "[m]ere allegations of constitutional retaliation will not suffice; [he] must rather allege specific facts showing retaliation because of the exercise of [his] constitutional rights.'" *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) (citation omitted). He "'must prove that "but for" the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place.'" *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citation omitted). Plaintiff "must allege more than his personal belief that he is the victim of retaliation." *See Jones*

*v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999); *Brown v. Sales*, 134 F.3d 382, 1998 WL 42527, *3 (10th Cir. Feb. 4, 1998) (unpublished) (citing an earlier Fifth Circuit decision holding the same). To state a First Amendment retaliation claim, Plaintiff must show:

> (1) that [he] was engaged in constitutionally protected activity; (2) that the defendant[s'] actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant[s'] adverse action was substantially motivated as a response to [his] exercise of constitutionally protected conduct.

*Hinkle v. Beckham County Bd. of County Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

(Doc. 5, p. 7-8.)

Despite this prior explanation, the basis for the retaliation claim in Count I of the second amended complaint is unclear. First, Plaintiff points out that he has been in segregation on lockdown since December 9, 2023, and he claims generally that his placement in segregation is "out of 'Retaliation.'" (Doc. 11, p. 4-5, 18.) At another point, Plaintiff asserts that the January 2024 criminal threat charge was filed "[i]n Retaliation" and that filing the false charges in order to keep him in segregation was "an act of gross retaliation by the Defendant(s) Mathew Fenn and Kaelan Martinez." *Id.* at 8, 16. Plaintiff does not, however, clearly identify the constitutionally protected conduct that he believes substantially motivated his placement in segregation or substantially motivated Defendants Fenn and Martinez to fabricate reports that Plaintiff engaged in criminal threat. Liberally construing the pro se second amended complaint, Plaintiff may have intended to assert that he suffered retaliation because he is a practicing Muslim (*id.* at 5) and/or because he is currently pursuing claims in *Tahchawwickah I* against Liberal, Kansas[5] police officers, *id.* at 17.

---

[5] Liberal, Kansas is located in Seward County.

But even assuming that the constitutionally protected conduct Plaintiff believes led to retaliation against him was either the free exercise of his religion or the pursuit of civil litigation, Plaintiff does not plausibly allege that any adverse action was substantially motivated by that conduct. Closest is the allegation that the "[c]harges/[w]arrant [in the 2024 criminal threat case] was served to the Plaintiff by Seward County Sheriff's Office on 1-4-2024 after [*Tahchawwickah I*] was approved for screening." *Id.* at 10. But *Tahchawwickah I* did not pass screening until February 12, 2024, well after Plaintiff was charged in the 2024 criminal threat case. *See* Case No. 23-3238-EFM-ADM, Docs. 27-28. Thus, is not plausible that the events occurred in retaliation for Plaintiff pursuing his claims in *Tahchawwickah I*.

Generally, leave to amend a complaint "shall be freely given when justice so requires." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). In this case, the February M&O clearly explained to Plaintiff what is required to state a plausible claim of unconstitutional retaliation. (Doc. 5, p. 7-8.) Because the second amended complaint nevertheless fails to allege sufficient facts to do so, the Court declines to allow Plaintiff the opportunity to further amend his complaint. *See Jensen v. West Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020) (explaining that refusing leave to amend is justified when there is "'failure to cure deficiencies by amendments previously allowed'"). Rather, Ground I will be dismissed without prejudice for failure to state a claim on which relief can be granted.

### C. Count II

In Count II, Plaintiff alleges "wrongful/false imprisonment" in violation of the Fourth Amendment, arguing that the criminal threat charge was brought due to Defendants Fenn and Martinez' false statements. But it is clear that Plaintiff's detention at the SCJ was not only because of the criminal threat charge. Prior to the events that lead to the criminal threat charge, Plaintiff

was detained at the SCJ on a criminal case filed in 2023, in which he is charged with attempted second-degree murder, battery against a law enforcement officer, criminal threat, and criminal damage to property. *See Tahchawwickah I*, Doc. 27, p. 3. That state criminal matter is ongoing and Plaintiff has not been granted release in that matter. Simply put, Plaintiff cannot make a plausible claim of false imprisonment based on the 2024 criminal threat charge when he would have been imprisoned even if the 2024 criminal threat charge never existed. *See McIntosh v. Messina*, 2013 WL 1767801, *4 (D. Kan. April 24, 2013) (unpublished) (finding failure to state a claim of false imprisonment where the allegedly fabricated charge—assault on a federal officer— was not the only reason for the plaintiff's detention).

Thus, even taking all of the facts alleged in the second amended complaint as true, Plaintiff has failed to state a plausible claim of false imprisonment. The Court concludes that allowing Plaintiff the opportunity to further amend Count II would be futile because it is obvious that Plaintiff cannot prevail on his false imprisonment claim. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) ("Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."). Count II will be dismissed without prejudice for failure to state a claim on which relief can be granted.

### D. Count III

In Count III, Plaintiff alleges that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment by being placed in segregation due to the false charge of criminal threat. (Doc. 11, p. 19.) The Eighth Amendment prohibits the infliction of "cruel and unusual" punishment. *See* U.S. Const. amend. VIII. The United States Supreme Court has rejected arguments that segregation or solitary confinement are cruel and unusual punishment, generally,

finding that "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms,* 459 U.S. 460, 468 (1983). "To the extent that such conditions are restrictive and even harsh," but not cruel and unusual, "they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). "[A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt,* 459 U.S. at 468; *see also Penrod v. Zavaras,* 94 F.3d 1399, 1407 (10th Cir. 1996).

Although specific conditions of a prison's administrative segregation unit may violate the Eighth Amendment, Plaintiff does not make that argument here and this Court cannot serve as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). In any event, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003). Prison officials are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979). "Only when a prison administrator's actions are taken in bad faith and for no legitimate purpose are they not insulated from our review." *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. Appx. 739, 754-55 (10th Cir. 2014) (citing *Whitley v. Albers,* 475 U.S. 312, 322 (1986)).

Plaintiff does not describe in the second amended complaint the conditions he has endured in segregation, or lockdown, other than being denied a tablet and being allowed limited law library

access.[6] Starting from the position that "restrictive and even harsh" conditions are not unconstitutional, *see Rhodes*, Plaintiff has the burden of alleging conditions sufficiently serious so as to deprive him of the minimal civilized measure of life's necessities or subject him to a substantial risk of serious harm. Plaintiff has not met this burden.

Plaintiff's contention that the criminal threat charge against him is based on false allegations by Defendant Martinez' could be liberally construed as an argument that his placement in segregation was motivated by bad faith. But Plaintiff also states in the second amended complaint that he was placed in segregation because of his failure to follow day room rules, disobeying a direct order, abusive language toward an officer, and disorderly conduct. Thus, even taking all the facts alleged in the second amended complaint as true, Plaintiff has not alleged a plausible claim that his placement in segregation was motivated by bad faith and for no legitimate purpose. Therefore, Plaintiff's Eighth Amendment claim is subject to dismissal without prejudice for failure to state a claim on which relief can be granted.

### E. Count IV

Count IV relates to Plaintiffs claims regarding his mail, which was also the basis for the sole count in the amended complaint. On March 13, 2024, the Court issued a memorandum and order ("the March M&O") that explained:

> "It is settled that an inmate's legal mail may be opened by prison officials only in the presence of the inmate." *Bledsoe v. Biery*, 814 F. Supp. 58, 59 (D. Kan. Feb. 11, 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539, 575-77 (1974)). "The privileged treatment accorded legal mail stems from its importance in protecting inmates' right of access to the courts." *Id.* To assert a plausible claim of unconstitutional interference with the right to access the courts, however, a prisoner must allege sufficient facts to show that the act or acts in question hindered his or her efforts to pursue a nonfrivolous claim. *See Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (applying actual injury requirement to claims of an insufficient prison

---

[6] Plaintiff asks the Court to "move Seward County Jail access to the legal library for more th[a]n one hour," but he does not state whether he currently receives access for one hour per day, per week, per month, or in total. (*See* Doc. 11, p. 17.)

law library, which is also at its base a claim of unconstitutional interference with access to the courts).

The Tenth Circuit also has held that one "isolated incident, without any evidence of improper motive or resulting interference with [a prisoner's] right to counsel or to access the courts, does not give rise to a constitutional violation." *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Salazar v. Whisker*, 804 Fed. Appx. 1007, 1007 (10th Cir. May 8, 2020) (unpublished order and judgment) ("[A]n isolated incident of opening a prisoner's legal mail outside the prisoner's presence does not violate the Constitution.").

The amended complaint identifies only a single instance when Defendant [Hernandez] opened Plaintiff's legal mail outside of his presence and it does not include alleged facts that show Defendant had an improper motive for opening and reading Plaintiff's legal mail outside of his presence. Plaintiff briefly alleges in the amended complaint that Defendant's acts "hinder[ed] his efforts to a legal claim." (Doc. 8, p. 11.) But the amended complaint includes no other facts about the claim that was hindered or how Defendant's acts limited Plaintiff's access to the courts. This type of conclusory statement is insufficient, standing alone, to support a plausible claim for relief. *See Hall*, 935 F.2d [at 1110][ ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."). In short, because the amended complaint, even liberally construed, alleges only an isolated incident when Defendant opened Plaintiff's legal mail outside of his presence, it does not state a plausible claim for relief under § 1983.

(Doc. 10, p. 3-4.)

The second amended complaint, like the amended complaint, identifies only a single instance when Defendant Hernandez allegedly opened and read Plaintiff's legal mail outside of his presence[7] and it fails to plausibly allege that this event hindered Plaintiff's efforts to pursue a nonfrivolous claim. The March M&O clearly explained to Plaintiff what is required to state a plausible claim of unconstitutional interference with prisoner mail and which parts of that claim were insufficiently alleged in the amended complaint. (Doc. 10, p. 3-4.) Because this deficiency

---

[7] Although the second amended complaint generally alleges that Plaintiff has not received his mail in its entirety, it contains no further details explaining what mail has not been received in full, when that mail was partially received, which Defendants were involved, etc. As Plaintiff has been previously advised, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *See Hall*, 935 F.2d at 1110; (Doc. 5, p. 2).

remains in the second amended complaint, the Court declines to allow Plaintiff the opportunity to further amend his complaint. *See Jensen*, 968 F.3d at 1202. Rather, Ground IV will be dismissed without prejudice for failure to state a claim on which relief can be granted.

### F. Count V

Similarly, Count V alleges a due process violation based on the grievance process in place at SCJ; the initial complaint filed in this matter also alleged a due process violation in the SCJ grievance system, although the claim in the initial complaint was based on different facts. (*See* Doc. 1, p. 33.) In an M&O issued on February 12, 2024, the Court explained to Plaintiff:

> "[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." *Murray v. Albany County Bd. of County Comm'rs*, 211 F.3d 1278, 2000 WL 472842, *1 (10th Cir. April 20, 2000) (unpublished order and judgment); *see also Spry v. McKune*, 479 Fed. Appx. 180, 2012 WL 2308711, *1 (10th Cir. June 19, 2012) (unpublished order and judgment) ("Inmates do not have a protected liberty interest in pursuing formal prison grievance procedures.").

(Doc. 5, p. 8.)

The second amended complaint, like the original complaint, alleges a procedural due process violation based on Plaintiff's records being erased from the SCJ grievance system. Because the Court has already explained to Plaintiff that this is not a plausible claim for relief, the Court declines to allow Plaintiff the opportunity to further amend this claim. Rather, Ground V will be dismissed without prejudice for failure to state a claim on which relief can be granted.

### IV. Conclusion

Despite the Court previously setting out the rules on joining multiple defendants and multiple claims in a single lawsuit, the currently operative second amended complaint continues to violate those rules. Generally speaking, when faced with misjoinder, the Court would sever improperly joined parties or claims to ensure compliance with the rules on joinder. Here, however,

each of the five claims asserted in the second amended complaint is independently subject to dismissal for failure to state a claim on which relief can be granted. All of the deficiencies in the claims are deficiencies which Plaintiff had a previous opportunity to cure or which cannot be cured by further amendment. Accordingly, this matter will be dismissed without prejudice for failure to state a plausible claim on which relief can be granted.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is dismissed without prejudice for failure to state a plausible claim on which relief could be granted.


**IT IS SO ORDERED**.

**Dated April 10, 2024, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
United States District Judge